UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| B. MICHELLE HARRIS,<br>4505 Fifth Street, N.W.<br>Washington, D.C. 20011<br><br>      Plaintiff,<br><br>      v.<br><br>BOARD OF TRUSTEES OF THE<br>UNIVERSITY OF THE DISTRICT<br> OF COLUMBIA,<br>4200 Connecticut Avenue, N.W., Bldg. 39<br>Washington, D.C. 20008 | Civil Action No. |

**COMPLAINT FOR UNLAWFUL DISCRIMINATION AND
TORTIOUS INTERFERENCE WITH EMPLOYMENT CONTRACT**
**(JURY TRIAL DEMANDED)**

I. **JURISDICTION AND VENUE**

1.  Jurisdiction of this action is founded upon the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* this being an action brought to remedy illegal discrimination, retaliation, and harassment.  This action also states a claim under the District of Columbia Human Rights Act, D.C. Code §§ 2-1431.01, *et seq.,* which also provides a remedy for illegal discrimination and harassment.  This action also states a claim under the District of Columbia Whistleblower Protection Act, D.C. Code §§ 1-615.51, *et seq.*

2.  This proceeding is instituted in the United States District Court for the District of Columbia as the judicial forum in which the cause of action arose, and as the place where the relevant acts giving rise to this controversy occurred.

## II. PARTIES

3. Plaintiff B. Michelle Harris is a resident of the District of Columbia, is of lawful age, is a citizen of the United States, and at the time of this filing, is employed as a member of the teaching faculty employed by Defendant Board of Trustees of the University of the District of Columbia ("UDC").

4. Defendant Board of Trustees of the University of the District of Columbia is the governing body of the University of the District of Columbia, which is an agency of the District of Columbia government.

## III. STATEMENT OF FACTS

5. Plaintiff B. Michelle Harris is an African-American female citizen of the United States, who was born and raised in Washington, D.C.

6. Plaintiff B. Michelle Harris is a tenured member of the UDC faculty.

7. Plaintiff Harris has served for nearly five years as an Executive Board member of the Faculty Association of the University of the District of Columbia. She has also been an active member of the Faculty Senate of the University of the District of Columbia.

8. Plaintiff Harris possesses four academic degrees: a B.A. in Chemistry from College of the Holy Cross (Worcester, Massachusetts); an M.S. in Human Nutrition and Food Science from Framingham State University (Massachusetts); an M.S. in Public Health from Harvard University; and a Ph.D. in Nutrition from the University of Maryland.

9. Dr. B. Michelle Harris has received numerous fellowships and awards for science during her career, from such distinguished organizations as the National Bureau of Standards (Analytical Chemistry Division), the Harvard University School of Public Health, the Network

of Minority Research investigators (National Institutes of Health) and the American Association for the Advancement of Science.

10. Dr. Harris was hired by the UDC as an Assistant Professor of Nutrition in 2006 in the College of Arts and Sciences ("CAS"). In 2011, the Nutrition Program was subsequently transferred to the newly-established College of Agriculture, Urban Sustainability and Environmental Sciences (CAUSES).

11. At the time she was hired by the UDC, Dr. Michelle Harris possessed more than ten years of progressive experience in teaching in a college or university.

12. At the time she was hired by the UDC, Dr. Harris possessed more than fifteen years of progressive experience as a professional nutritionist and dietitian.

13. Notwithstanding her experience in teaching and her experience as a professional nutritionist and registered dietitian, Defendant UDC hired Dr. Harris at only the Assistant Professor level.

14. In 2012, Dr. Harris was promoted by UDC to Associate Professor in the UDC College of Agriculture, Urban Sustainability and Environmental Sciences ("CAUSES").

16. Beginning in about 2012, Dr. Harris noticed that UDC was hiring younger, white faculty members who had little or no teaching experience, yet were paying the new instructors as much, or more, than what UDC was paying Dr. Harris.

17. In 2014, and again in in 2015, Dr. Harris complained to UDC officials that the Black-American staff and students in the UDC Department of Nutrition and Dietetics were being discriminated against because of their race.

18. In 2013, 2014, 2015, and 2016, Dr. Harris complained to UDC officials that the UDC was discriminating against Professor Barbara Harvey, a Black-American faculty colleague who had been tenured in the UDC Department of Nutrition and Dietetics for more than 30 years.

19. Dr. Harris also complained to UDC officials that the UDC Department of Nutrition and Dietetics was discriminating against Black-American students in favor of white students and foreign-born students.

20. In 2014, officials at UDC began a concerted campaign of harassment, discrimination and intimidation against Dr. B. Michelle Harris, ostensibly because Dr. Harris had complained about UDC's discriminatory practices.

21. Beginning in July 2014, Dr. Harris had written letters to District of Columbia City Council Chairman Phil Mendelson, other City Councilmembers, and the Mayor about the corruption, fraud, waste and abuse practiced by UDC administrators.

22. In her letters to City Council Chairman Mendelson and others about UDC mismanagement, Dr. Harris also mentioned the fact that the UDC was setting up the Community College in a way that discriminated against Native Black Washingtonians.

23. Dr. Harris continued to write letters and emails to City Council Chairman Mendelson and others until Councilman Mendelson agreed to meet with Dr. Harris.

24. On October 17, 2014, Dr. Michelle Harris led a delegation of UDC faculty and students downtown to City Council Chambers to meet with Council Chairman Mendelson to discuss the inequalities and corruption at UDC.

25. In 2014, Dr. Prema Ganganna encouraged a foreign-born student to file a discrimination complaint against Plaintiff Harris because Dr. Harris accused Dr. Ganganna of

violating the UDC regulations to allow the student to enroll in courses the student was ineligible to take.

26. The student Complaint against Dr. Harris was investigated by Brian Ramsay, the UDC Equal Employment Opportunity Coordinator.

27. Mr. Ramsay's investigation found that there was no evidence that Dr. Harris had discriminated against the student in any way.

28. Late in 2014, at the same time that she had the student file a discrimination complaint against Dr. Harris, Dr. Ganganna herself filed a discrimination complaint against Dr. Harris.

29. Dr. Ganganna's complaint against Dr. Harris alleged that Dr. Harris was prejudiced against persons who were not born in the United States, because Dr. Harris allegedly used a different tone of voice when speaking to foreign-born students and staff members.

30. At the time that Dr. Ganganna filed her complaint alleging that Dr. Harris was prejudiced against foreign-born persons, Dr. Ganganna was fully aware that Dr. Harris had lived for two years in a village in Latin America (Guatemala) while serving in the Peace Corps. In addition, Dr. Harris had been recognized as an expert in cross-cultural nutrition counseling.

31. Dr. Ganganna was also fully aware that Dr. Harris was fluent in at least one foreign language.

32. During the entire time that Dr. B. Michelle Harris has been employed by the UDC, Dr. Prema Ganganna has been Dr. Harris' immediate supervisor.

33. Dr. Harris is married to a person who was not born in the United States, and who emigrated to the U.S.A.

34. In June 2015, notwithstanding the fact that Bryan Ramsay had completely exonerated Dr. Harris of any charges of discrimination against her six months earlier, UDC re-opened its investigation of Dr. Michelle Harris.

35. Also in June 2015, Dr. Michelle Harris and Professor Barbara Harvey each filed a complaint of discrimination with the U. S. Equal Employment Opportunity Commission.

36. Subsequent to Dr. Harris' and Professor Barbara Harvey's filing their complaints of discrimination against the UDC, the UDC escalated its campaign of discrimination and retaliation against the two women.

37. Professor Barbara Harvey was suspended from her faculty position in 2015, and was terminated in 2017, in a manner that was contrived and fraudulent.

38. Similarly, Dr. B. Michelle Harris has been subjected to retaliation that is both egregious and contrived.

39. Dr. Prema Ganganna held dual positions as Director of the UDC Didactic Program in Dietetics and Nutrition, while simultaneously occupying the position of Chairperson of the UDC Department of Health, Nursing and Nutrition.

40. When Dr. Prema Ganganna left her position on the UDC faculty in June 2017, Dr. B. Michelle Harris was the only person on the UDC faculty eligible to be Director of the UDC Didactic Program in Dietetics and Nutrition ("DPD").

41. Dr. Pier Broadnax, a long-time member of the UDC College of Nursing faculty and a Black American, was eminently qualified to succeed Dr. Ganganna as Chairperson of the UDC Department of Health, Nursing and Nutrition.

42. Instead of allowing Dr. B. Michelle Harris or Dr. Pier Broadnax an opportunity to compete for either of the positions created by the departure of Dr. Ganganna, Dr. Sabine O'Hara,

the Dean of CAUSES, went outside the UDC to hire two Caucasian persons as administrators, totally bypassing the two Black-American faculty members who, in terms of tenure and service to the UDC, were even more qualified for the positions than the white persons hired by Sabine O'Hara.

43. Dr. Sabine O'Hara had previously told Dr. B. Michelle Harris that O'Hara would never consider promoting Dr. Harris because Dr. Harris did not have the right attitude to get promoted to a "managerial or administrative position."

44. When Dr. Prema Ganganna announced that she was leaving her employment with the UDC, Professor Barbara Harvey had been suspended for two years, and Dr. Sabine O'Hara had already recommended that the UDC President terminate Professor Harvey.

45. With the departures of Professor Harvey and Dr. Ganganna so eminent, Dr. B. Michelle Harris was the only tenured faculty member left in the Nutrition and Dietetics Program, and therefore, the only person in the UDC Nutrition and Dietetics Program eligible to serve on the Hiring Committee (Faculty Search Committee) to interview the candidates to carry the two full-time course loads created by the departures of Professors Harvey and Ganganna.

46. Instead of allowing Dr. Harris to serve on the Hiring Committee, Dr. O'Hara recruited the candidates without notifying Dr. Harris, convened the Hiring Committee in secret, and then made the announcement of the persons she had selected. These individuals are not regular faculty members. Dr. O'Hara circumvented the standards of faculty members by designating these two individuals as "Visiting Associate Professors." However, they were not visiting from any other institution of higher learning. In fact, they are being paid out of the budget of the University of the District of Columbia.

47.     Dr. O'Hara's exclusion of Dr. B. Michelle Harris from the Nutrition and Dietetics Hiring Committee was not only a violation of the Collective Bargaining Agreement between the University and the UDC faculty union, but the actions of Dr. O'Hara were in violation of the accrediting standards set by the body which accredits the UDC Nutrition and Dietetics Program.

48.     The actions of Dr. Sabine O'Hara in excluding Dr. Michelle Harris from the Nutrition and Dietetics Program Hiring Committee is part of a pattern of harassment and retaliation Defendant has directed towards Dr. B. Michelle Harris since Dr. Harris filed her own discrimination complaint, and when Dr. Harris encouraged Professor Barbara Harvey to also file a discrimination complaint.

49.     For instance, in early 2016, while Dr. Harris' charge of discrimination was still pending with the EEOC, the UDC Office of Risk Management conducted a sham inspection of the faculty office of Dr. B. Michelle Harris.  Shortly after the inspection, Dr. Harris received a memorandum from her immediate supervisor, Dr. Prema Ganganna, related to the bogus fire inspection.

50.     The memorandum from Ganganna to Dr. Harris was dated March 10, 2016, and was sent through Dr. Sabine O'Hara.

51.     Dr. Harris received the subject memorandum on March 9, 2016.

52.     The subject memorandum warned Dr. Harris that a fire inspection would be conducted on April 1, 2016, and if Dr. Harris' office was not cleaned to the satisfaction of the UDC Office of Risk Management, Dr. Harris would be subject to disciplinary action, up to, and including termination.

53.     Dr. Harris was aware that the offices of some of her colleagues in her suite and in other office suites in her building were far more cluttered than her office, and, in addition to

general clutter, some of those same colleagues left garbage and food waste, which waste drew flies and vermin.

54. Dr. Harris does not store food in her office.

55. To prove her point, Dr. Harris took photographs of her office and the offices of some of her colleagues contemporaneously.

56. Also, Dr. Harris retained (at her own expense) the services of a retired District of Columbia Fire Department Fire Inspector to officially inspect Dr. Harris' office, to determine if the inspection by the UDC Office of Risk Management was bona fide.

57. At no time did Defendant UDC ever present Dr. B. Michelle Harris with any evidence that the office of Dr. Harris had been inspected by anyone qualified to do a bona fide fire inspection.

58. At no time did UDC ever inform Dr. B. Michelle Harris what specific items in her office constituted a fire hazard.

59. At no time was Dr. B. Michelle Harris ever told what specific tasks needed to be done to remediate any potential fire hazard.

60. Upon information and belief, Dr. Prema Ganganna, who was born in India, favored Caucasian and foreign-born students over American-born Black students.

61. At a time when Prema Ganganna was assisting Sabine O'Hara in O'Hara's efforts to terminate Professor Barbara Harvey (for not having a license to practice nutrition and dietetics), Ganganna was hiring unlicensed persons to teach the courses formerly taught by Professor Barbara Harvey.

62. Upon information and belief, Dr. Sabine O'Hara, as Dean of the UDC College of Agriculture, Urban Sustainability and Environmental Sciences, has actively favored white and foreign-born applicants and employees over American-born Black employees.

63. Dr. Sabine O'Hara was born in Germany.

64. The majority of the faculty members hired in CAUSES by Dean O'Hara have been Caucasian.

65. The vast majority of the faculty and staff members within CAUSES who were recommended for termination by Sabine O'Hara are Black.

66. In the Spring Semester of 2017, Dr. Prema Ganganna, who has always supervised Dr. B. Michelle Harris, gave Dr. Harris a very high rating on Dr. Harris' Annual Faculty Performance Review.

67. The Department Evaluation and Promotion Committee ("DEPC"), a departmental committee which conducts annual assessments for faculty evaluations and promotions conducted their parallel evaluation of Dr. B. Michelle Harris. They also rated Dr. Harris as high in all assessed areas.

68. Dr. O'Hara, without any first-hand knowledge of Dr. B. Michelle Harris' faculty accomplishments or credentials, overrode the rating given to Dr. Harris by Dr. Ganganna and by the DEPC, and gave Dr. Harris a significantly lower rating than the evaluation given to Dr. Harris by Dr. Ganganna or by the evaluation committee.

69. Dr. B. Michelle Harris was eligible for promotion from Associate Professor to Full Professor, a promotion which would have resulted in a substantial increase in salary.

70. The artificially-lowered faculty appraisal given to Dr. B. Michelle Harris by Dean Sabine O'Hara had a negative effect on Dr. Harris' chances for promotion.

71. As a result of the actions of Dean Sabine O'Hara in lowering the faculty evaluation score of Dr. B. Michelle Harris, Dr. Harris was denied promotion to Full Professor in 2017.

72. Upon information and belief, Dean Sabine O'Hara lowered the faculty rating of Dr. B. Michelle Harris in retaliation for Dr. Harris' filing an EEO complaint accusing Dr. O'Hara and the University of discrimination.

73. Upon information and belief, Dean Sabine O'Hara also retaliated against Dr. B. Michelle Harris because Dr. Harris testified before the District of Columbia City Council that Dr. O'Hara was misusing Federal funds.

74. Dr. B. Michelle Harris also appeared before the UDC Board of Trustees in 2016 and 2017 to report that Dean Sabine O'Hara was misusing Federal funds.

75. In 2017, at a site visit by evaluators from the United States Department of Agriculture (from whom UDC receives funds), Dr. Harris reported to the assessors that Dr. O'Hara was misappropriating federal funds in that she was using these funds to hire non-faculty members from land grant to teach academic courses in CAUSES.

IV. STATEMENT OF CLAIM

76. As a direct and proximate result of Defendant's conduct, Plaintiff B. Michelle Harris has incurred and continues to incur a substantial loss of income.

77. As a direct and proximate result of Defendants' conduct, Plaintiff Harris' career and professional reputation have been severely damaged. Plaintiff has suffered mental anguish and has lost personal and professional esteem, and Plaintiff has incurred additional financial losses, including legal fees and costs, and the expenses of maintaining this legal action.

78. Plaintiff is informed and believes that the outrageous conduct described above was done with malice and with conscious disregard for B. Michelle Harris's legal rights, and Defendant UDC, through its officers and managing agents has authorized or ratified the unlawful conduct described herein.

79. Plaintiff B. Michelle Harris timely filed a charge of discrimination with the EEOC, charging Defendant UDC with hostile environment discrimination, disparate treatment, and retaliation based on her protected activity of opposing UDC's discriminatory practices.

80. On September 24. 2017, Plaintiff B. Michelle Harris received a right-to-sue letter from the EEOC, and all administrative prerequisites to this lawsuit have been satisfied.

81. Plaintiff B. Michelle Harris has no plain, adequate or complete remedy at law to redress the wrongs complained of herein, and Plaintiff is now suffering and will continue to suffer irreparable injury as a result of Defendant's acts and conduct as described herein. Unless Defendant is restrained by Order of this Court, Plaintiff will continue to suffer said irreparable injury.

### FIRST CAUSE OF ACTION—UNLAWFUL DISCRIMINATION

82. Plaintiff B. Michelle Harris alleges and re-alleges paragraphs 3-81 as if set forth fully and completely herein.

83. Defendant UDC has subjected Dr. Harris to unlawful disparate treatment in salary, in promotion, and in the terms and conditions of her employment, because of her race and national origin, and in retaliation for Dr. Harris's protected EEO activity.

84. By said acts, Defendant UDC has violated the rights of Plaintiff B. Michelle Harris as secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq;* and the District of Columbia Human Rights Act, D.C. Code §§ 2-1431.01 *et seq*

**SECOND CAUSE OF ACTION-WHISTLEBLOWER PROTECTION ACT**

85. Plaintiff Harris alleges and re-alleges paragraphs 3-81 as if set forth fully and completely herein.

86. Plaintiff submitted letters to the Mayor and City Council informing them of Defendant UDC's activities which constituted fraud, waste, abuse of authority, and illegal discrimination.

87. The disclosures made by Plaintiff concerning the UDC's illegal acts and acts of fraud, waste, abuse and discrimination were protected disclosures under the District of Columbia Whistleblower Protection Act, D.C. Code §§ 1-615.51 *et seq*.

88. Defendant WASA unlawfully subjected Plaintiff Harris to disparate treatment and a hostile work environment in retaliation for Dr. Harris making protected disclosures relating to UDC's illegal acts of fraud, waste, abuse, and illegal discrimination.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff B. Michelle Harris respectfully prays that this Honorable Court will advance this case on the docket, Order a jury trial of this matter, and cause a hearing in this case to be in every way expedited, and upon such hearing to issue a declaratory judgment in Plaintiff's favor, and against Defendant UDC, declaring that the UDC has violated the Plaintiff's rights under both common law and the various statutes enumerated in this Complaint, and that the following relief be awarded to Plaintiff:

1. Issue a declaratory judgment that Defendant's acts and practices complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended; and also violated Plaintiff's rights under the District of Columbia Human Rights Act, D.C. Code

§§ 2-1431.01 *et seq*; and also violated the rights of Dr. Harris under the District of Columbia Whistleblower Protection Act, D.C. Code §§ 1-615.51 *et seq*.

2. Order Defendants to make Plaintiff whole for the discrimination and retaliation Plaintiff has suffered as a result of the acts and practices as described herein, and provide appropriate back pay, wages, and benefits in an amount to be shown at trial.

3. Grant Plaintiff an award of compensatory damages to compensate Plaintiff Harris for the humiliation, emotional distress and loss of personal and professional esteem suffered by Plaintiff as a result of Defendant's intentional acts.

4. Order Defendant cease and desist their retaliatory harassment while this case proceeds.

5. Grant Plaintiff an award of compensatory damages for each instance of retaliation to which Plaintiff was subjected by Defendant, to compensate her for the emotional distress which Defendant's acts inflicted upon Plaintiff.

6. Grant Plaintiff her attorney's fees, and the costs and disbursements necessary to maintain this action.

7. Retain jurisdiction over this action to assure full compliance with the Orders of this Court and with applicable law, and require the Defendants to file such reports as the Court deems necessary to evaluate such compliance.

8. Grant such other and further relief as the Court deems necessary and proper.

Respectfully submitted,

_____/s/_____
John W. Davis, DCB# 931600
1629 K Street, N.W.
Suite 300
Washington, D.C. 20006
(202) 408-1952
(202) 403-3495, Facsimile
jwdalaw@gmail.com
Attorney for Plaintiff Michelle Harris